1

2

3

4

5

6

7

8               IN THE UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WANDA JOYCE CHURCH,

11          Plaintiff,                    No. CIV S-08-1904 GGH

12      vs.

13
     MICHAEL J. ASTRUE,                   ORDER
14   Commissioner of
     Social Security,
15
            Defendant.
16   _____/

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").  For the reasons that follow, plaintiff's

20   Motion for Summary Judgment is DENIED, the Commissioner's Cross Motion for Summary

21   Judgment[1] is GRANTED, and the Clerk is directed to enter judgment for the Commissioner.

22   \\\\\

23   \\\\\

24   \\\\\

25   _____

26      [1] Defendant only filed an opposition to plaintiff's motion for summary judgment,
     however, the court will construe the opposition to also be a cross motion for summary judgment.

1

1   BACKGROUND

2          Plaintiff, born September 2, 1958, applied on April 21, 2005 for supplemental

3   security income, alleging disability beginning on June 1, 2001.[2]  Tr. at 16.  However, as noted by

4   the ALJ, the current application contains medical records starting in 2005, the date of her

5   application.  Tr. at 31.  As a result, the ALJ focused on the time period starting in 2005.  Id.

6   Plaintiff was in a car accident in 1995 that resulted in neck surgery.  Tr. at 366.  Plaintiff states

7   that she suffers from a variety of physical and mental ailments including neck, hip and back

8   problems, high blood pressure, bipolar disorder and post traumatic stress disorder (PTSD).

9   Plaintiff's motion for summary judgment at 2.

10         In a decision dated November 14, 2007, ALJ L. Kalei Fong determined plaintiff

11  was not disabled.  The ALJ made the following findings:[3]

12

13         [2] Plaintiff previously filed an application for SSI on May 30, 2002, also alleging disability
      since June 1, 2001.  Tr. at 53-57.  That application was denied on August 15, 2002, and after
14    further appeal plaintiff received an unfavorable hearing decision on March 12, 2004.  Id.

15         [3] Disability Insurance Benefits are paid to disabled persons who have contributed to the
      Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to
16    disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in
      part, as an "inability to engage in any substantial gainful activity" due to "a medically
17    determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
      A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
18    See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
      137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
19                      Step one:  Is the claimant engaging in substantial gainful
                activity?  If so, the claimant is found not disabled.  If not, proceed
20          to step two.
                        Step two:  Does the claimant have a "severe" impairment?
21          If so, proceed to step three.  If not, then a finding of not disabled is
            appropriate.
22                      Step three:  Does the claimant's impairment or combination
            of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
23          404, Subpt. P, App.1?  If so, the claimant is automatically
            determined disabled.  If not, proceed to step four.
24                      Step four:  Is the claimant capable of performing his past
            work?  If so, the claimant is not disabled.  If not, proceed to step
25          five.
                        Step five:  Does the claimant have the residual functional
26          capacity to perform any other work?  If so, the claimant is not

1.      The claimant has not engaged in substantial gainful activity since April 21, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq*.).

2.      The claimant has the following severe impairments: degenerative disc disease of the cervical spine and status post cervical fusion with related degenerative joint disease of the left hip at the graft site (20 CFR 416.920(c)).

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work.  The claimant must be given the opportunity to use a cane for prolonged ambulation or for walking over uneven terrain.  Sedentary work involves lifting no more than 10 pounds at a time occasionally lifting or carrying articles like docket filed, ledgers, and small tools.  Jobs are sedentary if walking and standing are required occasionally and the other sedentary criteria are met (20 CFR 416.967).

5.      The claimant is capable of performing past relevant work as a convenience store shift manager.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6.      The claimant has not been under a disability, as defined in the Social Security Act since April 21, 2005, (20 CFR 416.920(f)), the date the application was filed.

Tr. at 19, 21-22, 26.

ISSUES PRESENTED

      Plaintiff has raised the following issues: A. Whether the ALJ failed to properly consider the opinions of the treating sources concerning plaintiff's mood disorder and physical limitations; and B. Whether the ALJ failed to develop the record with mental health treatment

---

disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
      The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

1    records referenced by a treating doctor.

2    LEGAL STANDARDS

3         ALJ Decision

4              The court reviews the Commissioner's decision to determine whether (1) it is

5    based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

6    the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

7    Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

8    Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

9    as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

10   625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ

11   is responsible for determining credibility, resolving conflicts in medical testimony, and resolving

12   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

13   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

14   rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

15        Prior Decision

16             The principles of res judicata apply to administrative decisions.  A previous final

17   determination of nondisability creates a presumption of continuing nondisability with respect to

18   any subsequent unadjudicated period of alleged disability.  See Lester v. Chater, 81 F.3d 821,

19   827 (9th Cir.1996); Social Security Acquiescence Ruling 97-4(9).  This presumption may be

20   overcome by a showing of "changed circumstances."  Chavez v. Bowen, 844 F.2d 691, 693 (9th

21   Cir.1988).  To show "changed circumstances," the evidence must establish that the claimant

22   suffers from an impairment that indicates a greater disability since the prior decision denying

23   benefits.  Chavez, 844 F.2d at 693.  In other words, the presumption of nondisability does not

24   apply if the claimant raises an issue not considered in the previous decision, such as the existence

25   of a new impairment, or demonstrates an increase in the severity of an impairment, either one of

26   which adversely affects his residual functional capacity.  See Lester, 81 F.3d at 827; see also

4

1   Acquiescence Ruling 97-4(9) ("where the final decision by the ALJ on the prior claim, which

2   found the claimant not disabled, contained findings of the claimant's residual functional capacity,

3   education, and work experience, SSA may not make different findings in adjudicating the

4   subsequent disability claim unless there is new and material evidence relating to the claimant's

5   residual functional capacity, education or work experience").

6           In the instant case, the ALJ stated:

7           "[T]he presumption of continuing non-disability is rebutted because the current
            record contains allegations regarding additional impairments that were not
8           considered at the time of the earlier prior decision.  Thus, although non-disability
            cannot be presumed, each finding of the prior decision will be reviewed to
9           determine whether it will be adopted or whether new and material evidence has
            been obtained in the current claim which would support a change in the finding.

10

11  Tr. at 17.

12  ANALYSIS

13          A.  Whether the ALJ failed to properly consider treating doctors opinions

14          Plaintiff contends that the ALJ failed to properly consider the opinions of her

15  treating sources regarding mental health issues and physical limitations due to neck, shoulder and

16  back problems radiating to plaintiff's hip and knee.

17          In evaluating medical opinions, the case law and regulations distinguish among

18  the opinions of three types of physicians: (1) those who treat the claimant (treating physicians);

19  (2) those who examine but do not treat the claimant (examining physicians); and (3) those who

20  neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502,

21  416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1995, as amended April 9, 1996).

22  As a general rule, the opinions of treating physicians are given greater weight than those of other

23  physicians, because treating physicians are employed to cure and therefore have a greater

24  opportunity to know and observe the claimant.  Smolen v. Chater, 80 F.3d 1273, 1285 (9th

25  Cir.1996); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989) (citing Sprague v. Bowen,

26  812 F.2d 1226, 1230 (9th Cir.1987)).  Although the treating physician's opinion is entitled to

5

1    great deference, it is not necessarily conclusive as to the question of disability.  Rodriguez v.

2    Bowen, 876 F.2d 759, 761-62 (9th Cir.1989).

3            Where the treating physician's opinion is uncontradicted, it may be rejected only

4    for "clear and convincing" reasons.  Lester, 81 F.3d at 830.  Where the treating physician's

5    opinion is contradicted by another physician, the ALJ may only reject the opinion of the treating

6    physician if the ALJ provides specific and legitimate reasons for doing so that are based on

7    substantial evidence in the record.  See Lester, 81 F.3d at 830; see also 20 C.F.R. §§ 404.1527(d),

8    416.927(d) (requiring that Social Security Administration "always give good reasons in [the]

9    notice of determination or decision for the weight [given to the] treating source's opinion");

10   Social Security Ruling[4] 96-2p ("the notice of the determination or decision must contain specific

11   reasons for the weight given to the treating source's medical opinion, supported by the evidence

12   in the case record, and must be sufficiently specific to make clear to any subsequent reviewers

13   the weight the adjudicator gave to the treating source's medical opinion and the reasons for that

14   weight.").

15           An examining physician's opinion based on independent clinical findings that

16   differ from the findings of a treating physician may constitute substantial evidence.  Orn v.

17   Astrue, 495 F.3d 625, 632 (9th Cir.2007) ("Independent clinical findings can be either (1)

18   diagnoses that differ from those offered by another physician and that are supported by

19   substantial evidence, (citation omitted) or (2) findings based on objective medical tests that the

20   treating physician has not herself considered." (citation omitted)).  However, even if an

21   examining physician's opinion constitutes substantial evidence, the treating physician's opinion

22   \\\\\

23

24

25       [4] Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with

26   the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.1989).

1    is still entitled to deference.[5]  See id.; see also SSR 96-2p (a finding that a treating physician's

2    opinion is not entitled to controlling weight does not mean that the opinion is rejected).

3            Finally, "[t]he opinion of a nonexamining physician cannot by itself constitute

4    substantial evidence that justifies the rejection of the opinion of either an examining physician *or*

5    *a treating physician.*"  Lester, 81 F.3d at 831 (emphasis in original).  The opinion of a

6    non-examining physician may serve as substantial evidence when it is consistent with other

7    independent evidence in the record.  Id. at 830-31.  "A report of a non-examining, non-treating

8    physician should be discounted and is not substantial evidence when contradicted by all other

9    evidence in the record."  See Gallant v. Heckler, 753 F.2d 1450, 1454 (9th Cir.1984) (quoting

10   Millner v. Schweiker, 725 F.2d 243, 245 (4th Cir.1984)).

11           Mental Impairment

12           Plaintiff argues that the ALJ did not properly consider the mental health evidence

13   of the treating sources, Dr. Rajappa and Nurse Rigg.[6]

14            The ALJ noted that in the prior decision, plaintiff was found not to have a severe

15   mental impairment.  Tr. at 20.  Since that decision plaintiff has received new mental health

16   treatment.[7]  Plaintiff underwent a psychiatric consultative examination by Dr. Joyce, in July

17   2005.  Tr. at 257.  Dr. Joyce diagnosed some mild anxiety symptoms but found no mental work

18   related functional limitations.  Tr. at 259.  In the current decision, the ALJ found that the mental

19

20           [5] "In many cases, a treating source's medical opinion will be entitled to the greatest weight
21   and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p. In
     determining what weight to accord the opinion of the treating physician, the ALJ is instructed to
22   consider the following factors: length of the treatment relationship and frequency of examination;
     nature and extent of the treatment relationship; the degree to which the opinion is supported by
23   relevant medical evidence; consistency of the opinion with the record as a whole; specialization;
     and any other factors that tend to support or contradict the opinion. 20 C.F.R. §§
24   404.1527(d)(2)(6), 416.927(d)(2)-(6).

25           [6] Shirley Rigg is a nurse practitioner.

26           [7] In her motion for summary judgment, plaintiff has only cited medical records since
     2005, even though plaintiff indicates disability since 2001.

7

1   impairments had not progressed and remained non-severe. Id. at 20-21.

2          Plaintiff contends that the ALJ disregarded the medical diagnoses and opinions of

3   her treating sources who met with plaintiff in 2007, two years after Dr. Joyce's examination.

4   Plaintiff's argument is misguided.  The ALJ correctly noted that the treatment records provide

5   few objective mental status examination findings nor does the record reveal that plaintiff had

6   undergone extensive mental health treatment.  Tr. at 21.  While a treating physician's opinion

7   should be given deference, in the instant case, the "treating physicians" do not appear to have

8   made substantive medical diagnoses.  Regardless, the ALJ provided specific and legitimate

9   reasons for rejecting their evidence that was based on substantial evidence in the record.

10          Plaintiff relies on a medical source statement from Dr. Rajappa, that states

11  plaintiff is bipolar and suffers from PTSD.  Tr. at 407.  The medical source statement consists of

12  the diagnosis and many boxes checked by the doctor.  When asked to support the assessment, Dr.

13  Rajappa wrote "see records," however, contrary to the instructions of the medical source

14  statement, no records were provided.  Due to the lack of supporting evidence, the ALJ rejected

15  Dr. Rajappa's assessment as unsupported and inconsistent with the other opinions.  Tr. at 21.

16  The ALJ stated that the other medical evidence in the record did not support Dr. Rajappa's

17  diagnoses or support the functional limitations he described.  Id.  The ALJ was correct in noting

18  the conflicting report from Dr. Joyce and the lack of other mental health evidence.

19          The records Dr. Rajappa referenced were provided to the Appeals Council nearly

20  six months after the ALJ issued his decision.  The Appeals Council, even with the additional

21  records, denied the request for review.  Tr. at 5.[8]  Moreover, after the court's review of the

22  records, it is not clear if Dr. Rajappa can even be classified as a treating doctor.  The records only

23  reveal that Dr. Rajappa met with plaintiff once for 35 minutes and may have relied on a general

24

25          [8] In the following section plaintiff argues that the ALJ failed to develop the record by not
    obtaining these records.  While the court will address that argument below, the records
26  themselves do not strengthen plaintiff's argument and ultimately weaken plaintiff's position.

8

intake questionnaire.  Tr. at 419.  Plaintiff stated to Dr. Rajappa that she suffered from PTSD and was told by others that she is bipolar.  Id.  After meeting with plaintiff, Dr. Rajappa stated that her mood was fair, her behavior during the interview was appropriate and her memory and concentration were somewhat decreased.  Tr. at 419.  From this examination Dr. Rajappa diagnosed plaintiff as bipolar and suffering from PTSD.  This diagnosis is inconsistent with Dr. Rajappa's own findings or the other medical evidence in the record and it appears that Dr. Rajappa relied on plaintiff's subjective complaints.  "An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008), citing Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Fair V. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)).  Furthermore, "the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."  Id.

Plaintiff also points to the medical records that show plaintiff met many times with Nurse Rigg who provided numerous refills for Lexapro and Bupropion for depression and anxiety from July 2005 to January 2007.  Tr. at 283-300.  The ALJ did not reference this evidence in finding no severe mental health impairment.  Yet, the evidence is so minimal that the ALJ did not err in failing to address it.

While the records confirm the medication evidence, the records which plaintiff cites, do not contain any opinions of treating physicians or nurses.  Other than plaintiff stating she was depressed, plaintiff cites no medical diagnosis in these records.  While plaintiff was prescribed medication there is no other indication of mental health treatment.  The undersigned will not hold that the mere prescription for medicine creates a severe impairment, i.e., having some effect on the ability to work per se.  In her motion for summary judgment, plaintiff states that she was treated for depression on at least nine occasions, however, it appears plaintiff was just given a prescription on these occasions.  Upon review of the handwritten records, which at times are undecipherable, the court can find only a few references to depression or anxiety, but

1   no substantive information.  There are notes that plaintiff felt better after taking the medication,

2   but nothing that indicates a severe impairment nor treatment.  Tr. a 299.  Moreover, it seems that

3   plaintiff was able to control her depression with the medication, that would further support the

4   finding that any mental health impairment was not severe.  See Warre v. Commissioner of Social

5   Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively

6   with medication are not disabling for the purpose of determining eligibility for SSI benefits).

7            Thus, the ALJ did not err in failing to consider the evidence from Nurse Rigg and

8   discounting Dr. Rajappa's report.  The decision was quite thorough and contained specific

9   reasons for not finding a severe mental impairment that would warrant disability.

10                    Physical Impairment

11           Plaintiff next contends that the ALJ did not properly consider the treating sources'

12  opinions concerning plaintiff's physical limitations due to neck, shoulder, and back problems

13  radiating to her hip and knee.

14           The ALJ found that plaintiff had the following severe impairments: degenerative

15  disc disease of the cervical spine and status post cervical fusion with related degenerative joint

16  disease of the left hip at the graft site.  Tr. at 19.  The record established that plaintiff had left hip

17  pain, degenerative disc disease that was capable of radiating pain to her upper back and a hip

18  disorder that could radiate pain to the lower back.  Tr. at 19-20.  However, the ALJ found that

19  plaintiff no longer had an ongoing left upper extremity neuropathy, that had been found in the

20  previous decision.  Tr. at 19.  The ALJ stated that despite all these impairments, plaintiff had the

21  residual functional capacity to perform the full range of sedentary work.  Tr. at 21.

22           Plaintiff argues that the ALJ did not consider the treating opinion of Nurse Rigg and

23  only credited portions of opinions from the doctors that would result in a denial of benefits.

24  Plaintiff's argument is meritless.  An ALJ may properly rely upon only selected portions of a

25  medical opinion while rejecting other parts.  See, e.g., Magallanes v. Bowen, 881 F.2d 747, 753

26  (9th Cir. 1989) (ALJ's supported reliance on selected portions of conflicting opinion constitutes

1   substantial evidence).  However, such selective reliance must be consistent with the medical

2   record as a whole.  See, e.g., Edlund v. Massanari, 253 F.3d 1152, 1159 (9th Cir. 2001) (ALJ

3   cannot reject portion of medical report that is clearly reliable).  While the ALJ did credit some

4   statements more than others, the ALJ provided specific and legitimate reasons for doing so based

5   on substantial evidence in the record.  In fact, the ALJ was quite thorough in discussing the

6   evidence and medical records.

7           In the current application, the Disability Determination Service sources adopted

8   the residual functional capacity from the prior decision and assessed mild left upper extremity

9   limitations.  Tr. at 19, 260-67.  The ALJ rejected this finding noting that the record provides no

10  objective evidence to substantiate a current impairment of the left upper extremity.  Tr. at 19.

11          The ALJ referred to Nurse Rigg's records, who as a treating source, stated that

12  despite plaintiff's symptoms of left upper extremity neuropathy including a constant tingly

13  sensation in the hands, plaintiff's reaching, handling and fingering abilities were okay.  Tr. at

14  290, 370.  The ALJ also cited to the lack of any complaints involving upper extremity neuropathy

15  in the treatment record.  Tr. at 19.  Plaintiff was treated in February 2005 and did not mention

16  any pain or tingling in her arms, her grip strength was good bilaterally and range of motion of the

17  shoulders and arms was normal.  Tr. at 24.  The ALJ emphasized the lack of electrodiagnostic

18  testing or any other diagnostic testing regarding this ailment and the absence of any prescribed

19  treatment.  Tr. at 19-20.

20          Contrary to plaintiff's assertions, the ALJ accurately reflected Dr. Wang's

21  consultative orthopedic examination that plaintiff had no upper extremity impairment and

22  assessed no manipulative limitation.  Tr. at 20, 398.  However, the ALJ did find that Dr. Wang's

23  conclusion that plaintiff could only sit for an hour without interruption, which could limit her

24  ability to perform sedentary work, unsupported by the record.  Tr. at 25.  In rejecting Dr. Wang's

25  finding, the ALJ discussed the limited findings in relation to plaintiff's condition, the

26  conservative treatment and plaintiff's daily living activities.  Id.  The ALJ went into great detail

11

1    discussing the chores and actions plaintiff can accomplish in her daily activities demonstrating

2    her wide range of motion.  Plaintiff is able to cook, do laundry, clean dishes and dress herself.

3    Tr. at 25.  Despite claims of numbness in her hands plaintiff is able to pick up a paper clip with

4    either hand, make a first and write legibly.  Id.

5            The ALJ also discussed plaintiff's back, neck and hip pain.  The ALJ stated that

6    while plaintiff suffered from intermittent back pain, there is no diagnosis of a back impairment

7    and no treatment other than pain medication.  Tr. at 20.  While plaintiff was treated for neck and

8    hip pain in 2003 and 2004, there is little treatment since that time.  Id. at 24.  In February 2005,

9    plaintiff sought treatment as her neck began hurting.  Id.  An x-ray showed mild to moderate

10   degenerative changes but no acute findings.  She was given pain medication which provided

11   some improvement.  While there were other reports of chronic neck pain, the ALJ emphasized

12   the few objective findings.  Id.  The ALJ's findings are supported by the medical records.  Id. at

13   321, 324-25.

14           Other than plaintiff's subjective complaints to doctors, plaintiff cites to nothing in

15   the record to substantiate these claims of severe impairments and pain.  Plaintiff fails to

16   appreciate that the ALJ took plaintiff's complaints into account in delivering the decision.  The

17   ALJ's findings in regard to plaintiff's residual functional capacity reflect the opinions of

18   plaintiff's treating sources and the consultative examinations.  The ALJ stated that "the claimant

19   has the residual functional capacity to perform the full range of sedentary work.  The claimant

20   must be given the opportunity to use a cane for prolonged ambulation or for walking over uneven

21   terrain.  Sedentary work involves lifting no more than 10 pounds at a time occasionally lifting or

22   carrying articles like docket files, ledgers, and small tools."  Tr. at 21.  These findings are

23   consistent with the medical opinions and after reviewing the record, it is clear the ALJ did not err

24   in considering the treating sources.

25   \\\\\

26   \\\\\

12

1    B.  Whether the ALJ failed to develop the record

2         Plaintiff argues that the ALJ failed to develop the record concerning Dr. Rajappa's

3    mental health evaluation.

4         Disability hearings are not adversarial.  Dixon v. Heckler, 811 F.2d 506, 510 (10th

5    Cir. 1987) (holding that ALJ has basic duty to "inform himself about facts relevant to his

6    decision") (quoting Heckler v. Campbell, 461 U.S. 458, 471 n.1 (1983) (Brennan, J.,

7    concurring)).  The ALJ must fully and fairly develop the record, and when a claimant is not

8    represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts."

9    Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).[9]

10        Evidence raising an issue requiring the ALJ to investigate further depends on the

11   case.  Generally, there must be some objective evidence suggesting a condition which could have

12   a material impact on the disability decision.  See Smolen v. Chater, 80 F.3d 1273, 1288 (9th

13   Cir.1996); Wainwright v. Secretary of Health and Human Services, 939 F.2d 680, 682 (9th

14   Cir.1991).  "Ambiguous evidence . . . triggers the ALJ's duty to 'conduct an appropriate

15   inquiry.'"  Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288.).  The ALJ's

16   decision may be set aside due to his failure to develop the record if the claimant can demonstrate

17   prejudice or unfairness as a result of said failure.  Vidal v. Harris, 637 F.2d 710, 713 (9th Cir.

18   1991).  Thus, the Ninth Circuit places the burden of proving prejudice or unfairness on the

19   claimant.

20        The ALJ has a duty to develop the record if the evidence is ambiguous, however,

21   in this case, the ALJ did not find any ambiguity with respect to the mental health issues that

22   required further inquiry.  In the prior SSA decision, plaintiff was found not to have a severe

23   mental impairment.  The 2005 psychiatric consultative examination revealed that plaintiff's

24   mental impairments had not progressed other than some mild symptoms, but no work related

25
26        [9]  See also Crane v. Shalala, 76 F.3d 251, 255 (9th Cir.1996) (ALJ has duty to develop the record even when claimant is represented).

13

functional limitations.  Tr. at 20-21, 257-259.  The ALJ also stated that the medical records indicate no evidence of a worsening of plaintiff's functioning due to her mental health or any mental decompensation.  Tr. at 21.

As discussed above, the evidence concerning medication revealed that plaintiff was prescribed anti-depression and anti-anxiety medication, which made her feel better, but no other substantive mental health treatment.  Nearly the whole of the record before the ALJ demonstrated no severe mental health issues except for the two page report from Dr. Rajappa that made a few conclusory statements with no records in support.

Plaintiff argues that the ALJ should have ordered the records Dr. Rajappa mentioned, yet it is unclear why plaintiff, represented by counsel did not obtain the records. While the ALJ must fully and fairly develop the record where appropriate, the burden of proving disability is on plaintiff.  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

Ultimately, there was no ambiguity with respect to the mental health evidence and the ALJ was capable of rendering a proper decision without these records.  Plaintiff has failed to demonstrate prejudice or unfairness.  Most importantly, as the court stated in the previous section the records in question do nothing to strengthen plaintiff's arguments that she possessed a severe mental impairment.  This claim is denied.

CONCLUSION

Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and judgment is entered for the Commissioner.

DATED: 11/05/09                                        /s/ Gregory G. Hollows

                                                              _____
                                                              GREGORY G. HOLLOWS
                                                              U.S. MAGISTRATE JUDGE

ggh: ab
church1904.ss

14